# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

            Plaintiff,                  **Memorandum of Law & Order**

v.                              Civ. No. 12-668 (MJD/JJK)

R.J. ZAVORAL & SONS, INC.; JOHN T.
ZAVORAL; PETER M. ZAVORAL; and
CRAIG A. PIETRUSZEWSKI,

            Defendants.

David W. Fuller, Assistant United States Attorney, Counsel for Plaintiff.

Ted Roberts and Kyle E. Hart, Fabyanske, Westra, Hart & Thomson, P.A.,
Counsel for Defendants.

## I.    Introduction

This matter is before the Court on Defendants R.J. Zavoral & Sons, John T.
Zavoral, Peter M. Zavoral, and Craig A. Pietruszewski's motion to dismiss under
Federal Rules of Civil Procedure 12(b)(6) and 9(b).  [Docket No. 5.]  The Court
heard oral argument on June 22, 2012.

## II.    Background

The Government's complaint sets forth the following facts:

### A.     The Joint Venture

Defendant R.J. Zavoral & Sons, Inc. ("Zavoral"), is a Minnesota

corporation, of which Defendants Peter and John Zavoral are officers.  Zavoral

formed a joint venture with Ed's Construction ("the Joint Venture").  The Joint

Venture was established for the purpose of bidding on a construction contract

("the contract") related to the Heartsville Coulee Diversion—part of the East

Grand Forks Flood Damage Reduction Project ("the project").  The United States

Army Corps of Engineers ("COE") set aside the contract for a qualified company

under Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a)(1)(B).  The "8(a)

program" is administered by the Small Business Administration ("SBA") and is

intended to promote the business development of companies owned and

operated by "socially and economically disadvantaged individuals," including

women and members of minority groups.  15 U.S.C. § 631(f)(2)(A).  Ed's

Construction is qualified as an "8(a) concern."  Zavoral is not.

Federal regulations permit joint ventures between 8(a) concerns and non-

8(a) businesses for the purpose of obtaining work set aside for 8(a) concerns, so

long as a number of conditions are met.[1]  Such agreements are permitted only

where the 8(a) concern lacks capacity to perform the contract on its own.  13

C.F.R. § 124.513(a)(2).  Joint venture agreements must be approved by the SBA.

13 C.F.R. § 124.513(e).  To approve the agreement, the SBA must conclude that

the agreement is "fair and equitable and will be of substantial benefit to the 8(a)

concern" and that the 8(a) concern will receive a majority of the profits earned by

the joint venture.  13 C.F.R. § 124.513(a)(2), (c)(3).  Once approved, the 8(a)

concern must manage and control the joint venture's performance of the 8(a)

contract, and periodic reports must be provided to the SBA to confirm that the

8(a) requirements are being met.  13 C.F.R. § 124.513(c).

        The Joint Venture Agreement in this case was signed and dated on April 1,

2004 by Defendants John and Peter Zavoral and by Edward Morgan, president of

Ed's Construction.  The agreement recited terms which complied with the 8(a)

joint venture requirements discussed above:  Ed's Construction was to "provide

labor, materials, and equipment necessary to complete a minimum of fifty-one

percent (51%), or $2 million of the work to be completed, whichever is less," was

to be the "managing party" on the project, and was entitled to "fifty-one percent

---

[1] The Court here refers to the regulations in effect at the time of
Defendants' alleged fraud.

(51%) of the net before tax profits derived from the Joint Venture."  The

agreement also required the parties to submit quarterly financial statements to

the SBA in accordance with 13 C.F.R. § 124.513(c)(10).

### B.      The COE Contract

In May 2004 the COE sought bids for work on the project.  The contract

stated that "[o]nly those firms recognized as 8(a) by the [SBA] will be el[i]gible to

bid."  The contract also specified that "the SBA . . . is the prime contractor and

retains responsibility for 8(a) eligibility determinations and related issues, and

for providing counseling and assistance to the 8(a) Contractor under the 8(a)

Program."  For payment to be made under the contract "a determination must be

made that supplies or services conform to the contract requirements."  Finally,

the signature page stated:  "The offeror agrees to perform the work required at

the prices specified below in strict accordance with the terms of this solicitation."

The COE sought a Determination of Eligibility from the SBA before it

awarded the contract to the Joint Venture, and the SBA provided that approval

based on representations in the Joint Venture Agreement.

### C.      Defendants' Alleged Fraud

The Government alleges that Defendants violated numerous terms of the

Joint Venture Agreement, operating in ways directly contrary to the SBA's 8(a)

requirements, and thereby fraudulently maintained the Joint Venture's contract

with the COE.  To begin, John Zavoral recommended his longtime friend,

Defendant Craig Pietruszewski to serve the accountant for the Joint Venture.

Ed's Construction was not aware that Pietruszewski had a close business

relationship with the Zavorals.  Pietruszewski only nominally worked for the

Joint Venture, actually worked as an agent of Zavoral, and deliberately failed to

provide information to Ed's Construction, even as Ed's Construction was

supposed to have been managing the project.

Defendants allegedly submitted false statements and records prepared by

Pietruszewski in order to give the SBA the impression that the Joint Venture was

complying with 8(a) requirements.  In particular, in October 2004, a document

prepared by Pietruszewski stated that Ed's Construction would complete over $2

million of work under the contract.  Contrary to 8(a) requirements, a majority of

the work projected to be done by Ed's Construction was actually performed by

subcontractors, without Ed's Construction's input or approval.  Ed's

Construction made efforts to participate in the work set out in the contract but was rebuffed by Defendants.  As result of its exclusion from the project, Ed's Construction actually received $1.7 million less under the contract than the $2.2 million which had been estimated.

The Government alleges that Defendants engaged in more than one scheme to create an appearance of compliance with 8(a) requirements.  One scheme involved "pass through materials costs," where Defendants claimed that $888,625 had been paid to Ed's Construction.  That figure actually represented material costs plus a 2% handling fee, which was actually a kickback paid to Ed's Construction "in return for Ed's Construction submitting documentation to make it appear as if Ed's had ordered the material and as if the material was related to work performed by Ed's when in fact neither was true."  A second scheme involved "leased employees from R.J. Zavoral," where Defendants told the SBA that $646,280 was paid to Ed's Construction when that amount actually represented payments made to Zavoral employees plus a 5% "profit" being paid to Ed's Construction.  The Government alleges that the "profit" amount was actually a kickback paid by Zavoral in exchange for documentation which "made it appear as if Ed's Construction performed the work in question" when it had

not done so.  Defendants engaged in these schemes in an effort make it appear

that the Joint Venture was operating in compliance with 8(a) requirements.

Defendants did not disclose these schemes in their quarterly 8(a) compliance

reports.

Defendants prevented Ed's Construction from accessing the quarterly

reports submitted to the SBA, and they did not adhere to the requirement that

Ed's Construction manage and approve all payments from the Joint Venture's

accounts.  The Government alleges that Ed's Construction performed only

$531,831.65 of work on a contract which it was supposed to have been managing

and supervising and which ultimately was worth more than $19.1 million.

The Government further alleges that a number of sub-contractors owned

or run by Defendants were given payments by the Joint Venture for work not

performed or unrelated to the project, and that Defendants created false invoices

in an effort to increase the apparent costs faced by the Joint Venture to decreased

the amount owed to Ed's Construction.

Defendants filed 24 requests for payment from the COE, each time

certifying that the "amounts requested [were] only for performance in

accordance with the specifications, terms, and conditions of the contract."  One

such request was signed by Pietruszewski, while the other 23 were signed by

John Zavoral.  The Government further alleges that Defendants made numerous

false statements to the SBA in their quarterly reports and in response to

complaints made by Ed's Construction to an SBA representative.

**D.    Procedural History**

The Government filed its complaint on March 14, 2012.  The Government

contends that Defendants engaged in fraud in order to secure the COE contract

and to maintain the Joint Venture's performance of the contract even when SBA

regulations were not being met.  The complaint sets forth six counts:  Count I,

False or fraudulent claims; Count II, False statements; Count III, Violations of the

Financial Institutions Reform, Recovery, and Enforcement Act of 1989

("FIRREA"); Court IV, Unjust enrichment; Count V, Payment by mistake; and

Count VI, Breach of contract.[2]

Defendants have now moved for dismissal under Rules 12(b)(6) and 9(b),

arguing that the Government has not stated a claim upon which relief may be

---

[2] The Government recently filed an Amended Complaint in this matter
[Docket No. 19] in order to accurately reflect the regulations in effect prior to
2011.  The substance of the complaint has not been altered.

granted and that the fraud and payment by mistake counts have not been pled with sufficient particularity.

### III.   Discussion

#### A.   Rule 9(b)

##### 1.  Standard

Plaintiffs must plead allegations of fraud with particularity.  Fed R. Civ. P. 9(b).  A pleading which alleges fraud or mistake must identify "who, what, where, when and how."  <u>Bank of Montreal v. Avalon Capital Grp., Inc.</u>, 743 F. Supp. 2d 1021, 1028 (D. Minn. 2010) (quoting <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 550 (8th Cir. 1997)).  The facts alleged must "give Defendants notice of what conduct is complained of and [allow them] to prepare a defense to such claim of misconduct."  <u>First Presbyterian Church of Mankato, Minn. v. John G. Kinnard & Co.</u>, 881 F. Supp. 441, 445 (D. Minn. 1995) (citation omitted).

##### 2.  Particularity of the Government's Claims

Defendants argue that the Government has not identified who among them made the fraudulent statements alleged by the Government.  The Government contends that its allegations are sufficiently particular.

As to John Zavoral, the Government alleges that he signed the contract between the Joint Venture and the COE; stated to an SBA official that work was performed by Ed's Construction when it was not; signed 23 payment requests certifying that the Joint Venture was complying with the terms of the contract; and signed an invoice from Zavoral to the Joint Venture which obfuscated whether Ed's Construction was to receive 51% of the profits under the contract. The Government further notes that John Zavoral signed the Joint Venture Agreement submitted to the SBA prior to the decision to award the contract.

As to Peter Zavoral, the Government has alleged that he signed the contract between the Joint Venture and the COE, as well as the Joint Venture Agreement; signed invoices sent to the Joint Venture to meant to conceal the actual costs and profits of the Joint Venture; and, as president of Zavoral, was aware of the other false statements alleged in the complaint.

As to Craig A. Pietruszewski, the Government has alleged that, as an agent of Zavoral, he signed a COE payment request on February 25, 2005 with knowledge that the Joint Venture was not in fact compliance with its 8(a) requirements; directed Ed's Construction to prepare false documentation which made it appear that Ed's Construction had ordered over $800,000 of equipment,

which it had not; and made representations to SBA representatives about Ed's Construction's participation in the project which he knew to be false.

While some of the allegations against Defendants are stated in the conjunctive, the Government's lengthy and detailed complaint sufficiently differentiates between the defendants and sets out the "who, what, where, when and how" of the alleged fraud as required.  See Bank of Montreal, 743 F. Supp. 2d at 1028.  The Government's complaint "give[s] Defendants notice of what conduct is complained of and [allows them] to prepare a defense."  First Presbyterian Church, 881 F. Supp. at 445.

While Defendants also argue that the Government's claim for payment by mistake is insufficiently particular under Rule 9(b), that claim is relatively straightforward.  The Government repeatedly asserts that the COE would not have continued making payments under the contract had it been aware of Defendants' fraud and failure to comply with the 8(a) requirements.  Because the Court finds that the Government's complaint is sufficiently specific with respect to Counts I, II, and V, the Court will deny Defendants' motion to dismiss those claims under Rule 9(b).

### B.    Rule 12(b)(6)

### 1.  Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state

a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint,

matters of public record, orders, materials embraced by the complaint, and

exhibits attached to the complaint."  PureChoice, Inc. v. Macke, Civil No. 07-

1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp.

v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

### 2.  Counts I & II:  FCA Claims

Counts I and II allege violations of the False Claims Act ("FCA").  The

parties dispute which version of the FCA applies here.  In 2009, Congress passed

the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21,

123 Stat. 1617 (2009), amending some of the provisions of the FCA.  Some of the

new provisions were made retroactive, while others were not.  Relevant here is

the provision codified at 31 U.S.C. § 3729(a)(1)(B), which was made retroactive to

"all claims under the False Claims Act . . . that [were] pending on or after [June 7,

2008]."  FERA § 4(f), 123 Stat. at 1625.

The pre-FERA language, previously codified at 18 U.S.C. 3729(a)(2),

imposes liability on a defendant "who knowingly makes, uses, or causes to be

made or used, a false record or statement to get a false or fraudulent claim paid

or approved by the government."  The current provision imposes liability on a

defendant who "knowingly makes, uses, or causes to be made or used, a false

record or statement material to a false or fraudulent claim."  31 U.S.C. §

3729(a)(1)(B).

Defendants argue that the earlier version of this FCA provision applies

because all alleged <u>false claims</u> made by the Joint Venture were made prior to

13

June 7, 2008.  The government contends that the relevant "claim" is not an

alleged false claim by a defendant, but the Government's own legal case which

arises out of such a claim.

The Eighth Circuit has not directly addressed this question of retroactivity.

See United States v. Hawley, 619 F.3d 886, 894 (8th Cir. 2010).  While some courts

have followed the logic advanced by Defendants, others have adopted the

position advanced by the Government.  Compare United States ex rel. Hopper v.

Solvay Pharms., Inc., 588 F.3d 1318, 1327 n.3 (11th Cir. 2009) and United States v.

Hawley, 812 F. Supp. 2d 949, 957-58 (N.D. Iowa 2011) ("[T]he relevant

amendment is applicable to 'claims,' or a demand for money, and not to 'legal

cases.'"), with United States ex rel. Kirk v. Schindler Elevator Corp., 601 F.3d 94,

113 (2d Cir. 2010), rev'd on other grounds, 131 S. Ct. 1885 (2011); United States ex

rel. Yannacopoulos v. Gen. Dynamics, 652 F.3d 818, 822 n.2 (7th Cir. 2011)

(holding that the amendment applies retroactively to "cases"); United States ex

rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 267 n.1 (5th Cir. 2010).

Should the Court determine that the post-FERA version of the FCA

applies, it will also need to address constitutional issues raised by Defendants in

their Reply Memorandum.  For example, in Hawley, 812 F. Supp. 2d at 957-58,

the court concluded that, even if the term "claims" did refer to legal cases, the amendment would run afoul of the Constitution's ex post facto clause when applied to conduct occurring before the amendment's 2009 enactment.  <u>See also</u> <u>United States ex rel. Sanders v. Allison Engine Co., Inc.</u>, 667 F. Supp. 2d 747, 753 (S.D. Ohio 2009).

The Court need not resolve these legal issues at this stage because the Court concludes that the Government has pled facts sufficient make out a claim under even the narrower pre-FERA FCA provision.  In essence, the Government's claim advances a false certification theory.  <u>See</u> <u>United States v. Science Applications Int'l Corp.</u>, 626 F.3d 1257, 1266 (D.C. Cir. 2010) (applying pre-FERA FCA).  Under such a theory, "a claim for payment is false when it rests on a false representation of compliance with an applicable federal statute, federal regulation, or contractual term.  False certifications can be either express or implied.  Courts infer implied certifications from silence where certification was a prerequisite to the government action sought."  <u>Id.</u> (citations omitted).  Moreover, "to establish the existence of a 'false or fraudulent' claim on the basis of implied certification of a contractual condition, the [Government] must show

that the contractor withheld information about its noncompliance with material contractual requirements." Id. at 1269.

Here the Government has alleged that Defendants signed pay requests to the COE certifying that the requests were "only for performance in accordance with the specifications, terms, and conditions of the contract" and that the contract required the Joint Venture to be 8(a) compliant. The Government has set forth specific facts which, if proven, would indicate that the Joint Venture was not 8(a) compliant, that Defendants were aware that it was not compliant, that Defendants attempted to conceal that fact from the SBA and COE, and that Defendants repeatedly affirmed to the COE and the SBA that they were, in fact, complying with the terms of the contract in order to continue to receive payments. If proven, these facts may support a conclusion that Defendants' certifications were made for the purpose of getting "a false or fraudulent claim paid or approved by the government."

For these reasons, the Court concludes that the Government's complaint contains factual allegations sufficient to sustain its FCA claims at this stage of the litigation.

### 3.  Count III:  FIRREA Claim

The Government alleges that Defendants violated 15 U.S.C. § 645(a), which

states:

> Whoever makes any statement knowing it to be false, or whoever
> willfully overvalues any security, for the purpose of obtaining for
> himself or for any applicant any loan, or extension thereof by
> renewal, deferment of action, or otherwise, or the acceptance,
> release, or substitution of security therefor, or for the purpose of
> influencing in any way the action of the [SBA], or for the purpose of
> obtaining money, property, or anything of value, under this chapter,
> shall be punished by a fine of not more than $5,000 or by
> imprisonment for not more than two years, or both.

Under 12 U.S.C. § 1833a, anyone who violates or who conspires to violate this

provision may also be liable for a civil penalty.

Defendants argue that the Government has failed to allege any facts

indicating that they made false statements to the SBA for the purpose of

obtaining anything of value.  The Government submits that the schemes set out

in its complaint support such allegations.  In particular, the Government points

to its allegations that Defendants established the Joint Venture with an intention

circumvent the terms of the contract and that Defendants made repeated

statements meant to mislead the SBA into believing that it was complying with

8(a) requirements, including quarterly reports filed by Pietruszewski and

statements by John Zavoral to SBA officials, while payments were being made on

the project.  Had Defendants not made such statements, they would not have

been able to obtain or maintain the COE contract.  Thus, those statements were

made in order to obtain something of value—namely, the contract and the

payments made pursuant to the contract.  Moreover, had the SBA become aware

that the Joint Venture was not complying with its 8(a) requirements, the SBA

would have advised the COE to terminate the contract.  Defendants' continued

silence and misleading statements allowed them to continue to perform and

receive payments.

For the foregoing reasons, the Court concludes that the Government has

set out allegations which, if proven, would make Defendants liable under

FIRREA.

### 4.  Count IV:  Unjust Enrichment

Defendants argue that the Government's unjust enrichment claim fails

because the Government has adequate remedies at law in the form of its FCA

and FIRREA claims.  In response, the Government notes that the Eight Circuit

has approved of awards of damages for common law unjust enrichment and

payment by mistake in FCA actions.  See, e.g., United States v. Applied Pharm.

Consultants, Inc., 182 F.3d 603, 608 (8th Cir. 1999).  The Court concludes that, at a

minimum, the Government may maintain this claim as alternative claim for relief

under Rule 8 of the Federal Rules of Civil Procedure.  See, e.g., Daigle v. Ford

Motor Co., 713 F. Supp. 2d 822, 828 (D. Minn. 2010).  The Court will therefore

decline to dismiss the Government's unjust enrichment claim at this time.

### 5.  Count VI:  Breach of Contract

Defendants argue that the Government's breach of contract claim fails

because the Government fails to identify a particular contract provision violated

by Defendants.  Defendants argue that the Joint Venture technically abided by

the terms of the contract because the contract did not require the Joint Venture to

maintain 8(a) status during its performance of the contract.  This argument

requires a strained reading of the contract, which would allow a venture to be

8(a) qualified at bidding but then to immediately disregard the 8(a) requirements

as soon as actual work on an 8(a) project commenced.  This reading is dubious,

particularly in light of the SBA's 8(a) reporting requirements which persisted

through completion of the project.

Defendants also argue that they cannot be held liable for causing any

breach of contract by the Joint Venture.  Defendants cite to cases indicating that a

company is entitled to interfere with the contracts of its own subsidiary.  <u>See,</u>

<u>e.g.,</u> <u>James M. King & Assocs., Inc. v. G.D. Van Wagenen Co.,</u> 717 F Supp. 667,

679 (D. Minn. 1989) ("[A] parent [company] is privileged to, or justified in,

interfering with the contracts of its wholly-owned subsidiary provided it does

not use wrongful means and acts to protect its economic interests.").  Cases

recognizing such a privilege, however, are limited to situations where a parent

company interferes with a contract of its <u>wholly owned subsidiary</u>.  Here, the

Joint Venture was to be owned and operated by Zavoral and Ed's Construction.

The Government alleges that Defendants commandeered the Joint Venture,

operated it as their own, and, in doing so, violated not only the Joint Venture

Agreement, but also the contract with the Government.  The Court cannot apply

the privilege cited by Defendants, nor can it conclude at this early stage of

litigation that they are otherwise shielded from liability.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to

Dismiss [Docket No. 5] is **DENIED.**


Dated:  September 6, 2012                         <u>s/ Michael J. Davis</u>
                                                  Michael J. Davis
                                                  Chief Judge
                                                  United States District Court